## VOSSEN v. CITY OF ST. CLAIR.

1. MUNICIPAL CORPORATIONS — APPROPRIATION OF FUNDS — TIE VOTE.

   A resolution of the city council of St. Clair, adopted by a tie vote of aldermen and the affirmative vote of the mayor, is not sufficient to create an obligation of the city to be met by taxation, or to lay a tax, though it would be sufficient as a mere distribution of funds already on hand to the purposes for which they were raised.

2. SAME — FRANCHISES — CONTRACTS — CONSTRUCTION — GRANT BY COUNCIL—SUFFICIENCY OF VOTE.

   A contract by a city of the fourth class to purchase electric power, to be generated at a point north of the city limits, containing a clause granting the furnisher permission to erect and maintain appliances for the transmission of electricity in and through the streets of the city, and another clause providing that the furnisher shall not furnish to purchasers within a certain district south of the city limits, except upon permission of the city, is not merely the grant of a way to the city's power plant, but is the grant of a franchise through the city, to which extent the contract is void unless authorized by a two-thirds vote of all the aldermen elect, as provided by section 3111, 1 Comp. Laws.

3. Same—Contract—Incurring Indebtedness.

  A contract by a city to purchase electrical power which, though it incurs no direct indebtedness on the part of the city beyond the monthly payments due for the electrical current furnished, provides that the city shall furnish upwards of $10,000 worth of apparatus to make performance on the part of the furnisher available, involves an expenditure for a public improvement which cannot be authorized by a tie vote of aldermen and the affirmative vote of the mayor.

4. Same—Borrowed Money—Appropriation.

  Money raised by a city of the fourth class, by a sale of bonds authorized by the electors for the purpose of installing a larger boiler and pumps in its waterworks, cannot be expended by the council, by a tie vote of the aldermen, for the purchase of electrical machinery to enable the city to purchase electrical power to operate its waterworks system. (Section 3310, 1 Comp. Laws.)

Appeal from St. Clair; Law and Tappan, JJ. Submitted April 15, 1907. (Docket No. 99.) Decided July 1, 1907.

Bill by Jacob Vossen, Henry Rankin, John C. Pringle, Henry Fish, and Detlef Franck against the city of St. Clair to enjoin the performance of a contract. Defendant filed an answer in the nature of a cross-bill, bringing in as defendants A. C. Marshall, E. J. Ottaway, and Hugh H. Hart, parties to said contract, and prayed for the cancellation and surrender of the same. From a decree for cross-complainant, defendants appeal. Affirmed.

The city of St. Clair, which is of the fourth class, owned and operated a waterworks, and, in connection, an electric light plant, using steam for power. It became necessary, in the opinion of the common council, to enlarge the plant with a new boiler and new pumps, at a cost of $10,000, the money to be raised by selling the bonds of the city. The proposition was submitted to the electors at the April, 1905, election in the form here set out: "Shall the common council of the city of St. Clair borrow the sum of $10,000 to be expended in in-

stalling a larger boiler and pumps in the waterworks, and to issue coupon bonds of the city of St. Clair, Michigan, payable in 20 years from the date of issue and bearing interest at a rate not to exceed $4\frac{1}{2}$ per cent. per annum in payment therefor?" and carried. The bonds were sold and the money carried to the credit of the waterworks extension fund. Later the city by its mayor and clerk, pursuant to a resolution adopted by a tie vote of aldermen and the affirmative vote of the mayor, entered into a contract with the other defendants to purchase from them, for a period of ten years, electric power, generated at Port Huron, to drive the pumps of the plant and to light the city, the current to be delivered at the St. Clair waterworks plant. All parties concerned entered into the contract with the idea and purpose of using the money received from the sale of bonds in performance of the contract. It is stipulated in the contract that the city shall furnish, install, and maintain suitable transformers and purchase pumps suitable to be driven by electric power, and switches, instruments, lightning arresters, and other apparatus necessary for the purpose of receiving a high-tension current and reducing and applying it to the required purposes. Engineers, who made certain recommendations and comparisons, estimated the cost of the electrical equipment, pumps, and a standpipe at $10,950, with an additional $500 for heating the plant and for an apparatus for blowing the whistle. The contract does not require the city to erect a standpipe, the cost of which is estimated at $5,000, but the recommendations of the engineers and the estimates made of the cost of operation include and take account of a standpipe. Part of the consideration moving from the city to the defendant contractors is:

"*Fifth.* The party of the second part [the city] hereby grants permission to the party of the first part to erect and maintain poles, wires, cables, conduits or other appliances necessary for the transmission of electricity in and through the streets and alleys of the city of St. Clair,

provided that the character and location of said poles or other appliances must be approved by the common council, and further provided that the party of the first part agrees not to sell, give away, or supply on any terms whatever, electricity to any parties within the limits of the city of St. Clair, except as provided in this agreement.

" *Sixth.* It is hereby further agreed that said first party will not sell, give away, or supply on any terms whatever, electricity for light, power or any other purpose in the district south of the city limits of said city of St. Clair, bounded by the St. Clair river on the east, the Duchene road and McGregor farm on the south and the road commonly known as the Belle River Road on the west, without first obtaining permission therefor of said second party."

Complainants, resident property owners and taxpayers, filed the bill in this cause, praying for a temporary, and, eventually, a permanent, injunction restraining the city from doing any act in performance of said contract. After the filing of the bill, the aldermen elected at the April, 1906, election voted unanimously to rescind the contract and the action of the council relied upon to support it. By stipulation the bill was amended so as to make the city the sole defendant, it being understood that the city, in its answer, should claim the benefit of a cross-bill, bringing the other defendants, parties to said contract, upon the record, said other defendants to answer the original and the cross-bill. Answers were so made and filed, the cause came on to be heard, and a decree was made and entered declaring void the action of the common council of the city which resulted in the making of the agreement and requiring the agreement itself to be delivered up to be canceled. From this decree, defendants have appealed.

*Henry R. Baird*, for complainants.

*Avery & Walsh*, for cross-complainants.

*Phillips & Jenks*, for defendants.

OSTRANDER, J. (*after stating the facts*). The meritorious question is whether the use of this money in performance of the contract will be a diversion thereof which the common council could not by the vote given legally order. That the vote was not sufficient to create an obligation on the part of the city to be met by taxation, or to lay a tax, is clear. Unless it amounted to a mere distribution of funds already on hand to the purposes for which the funds were raised (*Bishop* v. *Lambert*, 114 Mich. 110; compare *Tennant* v. *Crocker*, 85 Mich. 328), there was no proper action of the common council. The city had on hand no other money which was available for performance of the contract. Before determining this question, a contention made by counsel for the city will be noticed.

Defendants, in their answer, ask that the city may be required to carry out the contract. The court below took judicial notice of the fact that the city of Port Huron lies to the north of the city of St. Clair; that the territory referred to in the fifth and sixth subdivisions of the contract above set out lies at and beyond the southern boundary of the city of St. Clair, and found that the grant in the contract of permission to erect poles, etc., is not merely the grant of a way to the city plant, but is the grant of a franchise through the city, to which extent the agreement is void as opposed to 1 Comp. Laws, § 3111, which provides that no such franchise shall be granted, except by a two-thirds vote of all the aldermen-elect. The suggestion of the court to counsel for defendants that the ruling would become noncontrolling if a disclaimer of franchise rights was made matter of record was not acted upon. In this court counsel for defendants have argued that the contract will not bear the construction that it confers a franchise, but the one only that it confers the right to bring to the place where it is to be delivered, namely, at the city plant, the current contracted to be delivered. We think the contract will bear the construction that a right of way through the city is

intended to be given to defendants and their successors and assigns. Whether the defendants and their successors would be bound by the construction they now assert, or whether they might waive this provision in their favor if the contract was otherwise valid, it is unnecessary to determine, for the reason that we think the contract is otherwise invalid.

The contract in terms requires the city to furnish certain apparatus; the clear inference being that performance of the contract by the defendants must await such action on the part of the city. The agreement is that such action shall be taken "as soon as possible." While the effect of the contract is to incur no direct indebtedness on the part of the city to defendants beyond the monthly payments due for the electrical current furnished, indirectly it involves, as has been pointed out, the present expenditure of more than $10,000 for a public improvement. In saying this, we find that, although the standpipe is not absolutely necessary to the operation of the waterworks under the contract, it is an essential part of the system which the city proposed to install and of the system, the economy of operation of which influenced the action of the common council which resulted in the contract. If the contract is enforceable, the city is, in any event, committed to the making of the specified improvements.

It is the contention of counsel for defendants that the money was lawfully borrowed to pay for an extension of the waterworks (1 Comp. Laws, § 3250), and that, if used as the contract contemplates, the result will be an extension of the waterworks. It is said that the electors determined only—that it is contemplated by the law that they shall determine only—the specific amount to be borrowed, the terms of the loan, and the general purpose to which the money shall be appropriated, and that the details, the method of accomplishing the general purpose, must be left to the common council. The soundness of the last proposition, as stated, may be admitted. *City of Centerville* v. *Guaranty Co.,* 118 Fed. 332; *Johnson* v.

*City of Rock Hill*, 57 S. C. 371.   The statute provision is that, before any money shall be raised or expended for the purchase, construction, or extension of waterworks, the council shall direct the board of public works to cause to be made an estimate of the expense thereof, and the question of raising the amount required for such purpose shall be submitted to the electors.   It is true that, after waterworks are constructed by the city, the common council may then raise and expend, in making repairs and alterations or in extending the works, such sum as is deemed advisable without submitting the question to electors, provided the sum so raised does not, with other levies, exceed in one year $1\frac{1}{4}$ per cent. of the taxable property of the city.   In this case the money was not raised, but was borrowed, and must be used (section 3249) exclusively for the purpose for which it was borrowed.   The common council, in securing funds, went to the people with a definite proposition.   Pursuant to statute requirements, the board of public works had been requested to furnish estimates of the cost of supplying what the council had voted to be a necessity, viz., a larger boiler and pumps.   Such estimate was furnished.   The council voted to raise the necessary money for the particular purposes by a loan.   The contract obligation is to expend this money, not in installing a larger boiler and pumps, not in enlarging the waterworks plant, but in purchasing and installing apparatus which will make the city a mere merchant of electrical current, and which will require, at least render expedient, the maintenance of its present steam plant to answer emergencies.   No estimate of the expense of this improvement was made by the board of public works before the money was borrowed. See *Mills* v. *City of Detroit*, 95 Mich. 422.   The fact that, if the contract is executed, the pumping capacity of the plant will be increased, is not controlling.   Assuming it to have been the general and the special purpose, at the inception of the proceedings, and down to the action resulting in the making of the contract, to increase the

pumping capacity of the plant, and, to this end, to increase the steam capacity, that this purpose will be accomplished, and that the cost of the proposed improvement would have equaled the cost of the contract improvement, it remains that the proposition submitted to the electors, and the contract proposition are, in other respects, so different that it cannot be supposed that those voting for one would have voted for the other proposition. The statute empowers the city to own and operate an electric light plant in connection with the waterworks (section 3258) if the electors, having an estimate of the expense thereof and being willing to raise so much money, should, by two-thirds of those voting, so decide. The statute also provides that the common council may contract, from year to year, or for a period of not more than 10 years, for supplying the city and inhabitants with light. Section 3265. The first of these methods was adopted by the electors of the city of St. Clair. The effect and purpose of the contract is to adopt the second method of providing lights for the city and the inhabitants, to shut down the electric light plant except as a place in which to transform and measure the current which is purchased, to make the city a buyer, instead of a manufacturer, of electricity. These results are not merely incidental to the disposition of money voted to be used in enlarging the waterworks, mere details in accomplishing the general purpose.

It is not intended to intimate an opinion concerning the power of cities owning waterworks and electric lighting plants to purchase power for their operation in the cheapest market. What is decided is that the common council of the city of St. Clair has, in fact, attempted to devote money borrowed for a specific purpose to another and different purpose, and that it may not do this by a tie vote of aldermen under a charter which requires that all moneys loaned or appropriated for the purposes of any particular fund shall be paid in and credited to such fund, and shall be applied to the purposes for which such mon-

eys were received and to none other.  1 Comp. Laws, §
3310.  See *Smedley* v. *City of Grand Rapids*, 125
Mich. 424, 429.

The decree is affirmed, with costs.

McALVAY, C. J., and MONTGOMERY, HOOKER, and
MOORE, JJ., concurred.