OAKLAND COUNTY DRAIN COM'R v. CITY OF ROYAL OAK.

1. APPEAL AND ERROR—CHANCERY CASE—DECLARATION OF RIGHTS—
REVIEW DE NOVO.
 Suit for declaration of rights under contracts between various
 governmental units and ordinances thereof being a chancery
 case is reviewed *de novo* by Supreme Court (3 Comp. Laws
 1929, § 13903 *et seq.*).

2. COUNTIES—INTERNAL IMPROVEMENTS—CONSTITUTIONAL LAW.
 The constitutional prohibition against the States engaging in
 a work of internal improvement also applies to a county as
 a political subdivision and instrumentality of the State
 (Const. 1908, art. 10, § 14).

3. MUNICIPAL CORPORATIONS—SELF-LIQUIDATING SEWAGE DISPOSAL
 SYSTEM—INTERNAL IMPROVEMENTS—PUBLIC HEALTH—POLICE
 POWER.
 Proposed self-liquidating sewage disposal system servicing some
 41 square miles of territory in 3 townships and in 8 cities
 and villages having a population of 100,000 people, *held,* not
 a work of internal improvement prohibited by the Constitution
 since such a system may be constructed in the interest of
 public health and welfare in the exercise of the police power
 (Const. 1908, art. 10, § 14; Act No. 342, Pub. Acts 1939, as
 amended by Act No. 353, Pub. Acts 1941).

4. STATES—SELF-LIQUIDATING PUBLIC WORKS.
 The State and its political subdivisions are not prohibited from
 engaging in self-liquidating public works projects (Const.
 1908, art. 10, § 14).

5. COUNTIES—GRANT OF CREDIT—CONSTITUTIONAL LAW.
 Constitutional prohibition against grant of the credit of the
 State to any person, association or corporation, public or
 private, applies to one of its counties as a political subdivision
 and instrumentality of the State (Const. 1908, art. 10, § 12).

6. SAME—LOAN OF CREDIT—SELF-LIQUIDATING SEWAGE DISPOSAL SYSTEM—PUBLIC HEALTH.

Proposed self-liquidating sewage disposal system servicing some 41 square miles of territory in 3 townships and in 8 cities and villages, having a population of approximately 100,000 people, would not constitute a loan of credit by the county in which the territory is situated that is proscribed by the Constitution where bonds to be issued are to be payable solely from revenues and will not be primary obligations of the county, and county, in expending money for the initial establishment of such system, is performing an authorized county function in respect to public health (Const. 1908, art. 10, § 12; Act No. 342, Pub. Acts 1939, as amended by Act No. 353, Pub. Acts 1941).

7. MUNICIPAL CORPORATIONS—USE OF STREETS—CONNECTING SEWERS —USE OF CITY SEWER SYSTEM—APPROVAL OF ELECTORATE—FRANCHISES.

Grant of use of streets of city, located in one county, to another county to maintain therein a connecting sewer between sewage disposal system, otherwise located entirely in such other county, and city's sewage system and right to flow sewage through city's system does not require the approval of the electors of the city but requires only the consent of the duly-constituted authorities of the city, since the flow of such sewage through the connecting sewer and the city's sewage system is not the transaction of a local business within the city and it is not necessary to obtain a franchise for such purpose (Const. 1908, art. 8, §§ 25, 28, 29; Act No. 342, Pub. Acts 1939, as amended by Act No. 353, Pub. Acts 1941).

8. SAME—CONNECTING SEWER—EASEMENT—FRANCHISES.

The right granted by a city to county, other than that in which grantor city is located, to construct and maintain a connecting sewer in the city's street, given incidental to principal purpose of contracts between city and county, that of transmission of a county sewage disposal district's sewage to city's sewage disposal plants, constitutes an easement rather than a franchise or license subject to 30-year limitation of the Constitution (Const. 1908, art. 8, §§ 25, 29; Act No. 342, Pub. Acts 1939, as amended by Act No. 353, Pub. Acts 1941).

9. STATUTES—INTERMUNICIPAL SEWAGE DISPOSAL FACILITIES—CONSTITUTIONALITY.

Statute providing that certain political subdivisions of the State might contract for the joint ownership and use of sewers and sewage disposal facilities ·for a period of 50 years and

validating previously made contracts for such purposes *held*, not contrary to constitutional restrictions (Act No. 129, Pub. Acts 1943).

10. CONSTITUTIONAL LAW—RATIFICATION BY LEGISLATURE—ULTRA VIRES MUNICIPAL CONTRACTS.

If an act could have been lawfully performed or done under precedent legislative authority, the legislature may subsequently ratify it and give it effect and such rule applies to *ultra vires* contracts of municipal corporations.

11. MUNICIPAL CORPORATIONS—CONTRACTS FOR USE OF SEWERS AND SEWAGE DISPOSAL FACILITIES—POLLUTION OF WATER SUPPLY—VALIDATING LEGISLATION.

Contracts between county and city in another county for use of surplus capacity of latter's sewers and sewage disposal facilities in order to dispose of sewage from a county sewage disposal district that has been polluting river waters and lake beaches at a point above the water intakes of such city *held*, valid where validating legislation applicable thereto has been subsequently enacted (Act No. 129, Pub. Acts 1943).

12. SAME—CONTRACT BETWEEN COUNTY AND ITS MUNICIPALITIES—SEWAGE DISPOSAL—DURATION.

Contract between county drain commissioner, as agent for county, and 8 cities and villages and 3 townships in which they were located for construction by county of sewage disposal system to service the community involved, whereunder the 11 municipalities were severally liable to pay for such service at contract rates by imposing charges upon users within respective boundaries and which contracts were to remain in force until revenue bonds, including refunding bonds, were retired, but not to exceed 40 years, *held*, valid in view of subsequently enacted validating legislation permitting contracts lasting for 50 years (Act No. 129, Pub. Acts 1943).

13. SAME—ELECTIONS—CHARTER AMENDMENTS—STATUTES.

Provisions of amendment of statute relative to submission of question of adoption of city charters and amendments thereto, designed to eliminate the submission of such questions at primary or special elections and setting forth that submission should be at the "next regular spring or fall election held in such city," did not restrict the submission of such question to city elections (1 Comp. Laws 1929, § 2257, as amended by Act No. 279, Pub. Acts 1939).

14. ELECTIONS—REGULAR FALL ELECTION.
    The election held on the Tuesday succeeding the first Monday
    of November in every even-numbered year is a regular fall
    election (1 Comp. Laws 1929, § 2995).

15. SAME—REGULAR SPRING ELECTION.
    The election held on the first Monday of April in every odd-
    numbered year is a regular spring election (1 Comp. Laws
    1929, § 2996).

16. MUNICIPAL CORPORATIONS—CHARTER AMENDMENTS—ELECTIONS.
    Charter amendments submitted in various cities embraced within
    sewage disposal district to empower them to enter into con-
    tract with county relative to sewage disposal service and facil-
    ities were properly submitted at a regular fall election where
    statute governing submission of such questions permitted sub-
    mission at regular spring or fall elections held in the cities
    (1 Comp. Laws 1929, § 2257, as amended by Act No. 279,
    Pub. Acts 1939; § 2995).

17. SAME—CONTRACTS FOR FUTURE SERVICES—DEBT LIMITATIONS.
    A contract for future services, to be paid for as rendered, is
    not an incurring of a present indebtedness for the aggregate
    of instalments within meaning of bonding limitations on a
    city.

18. SAME—CHARTER AMENDMENTS—CONTRACTS—SEWAGE DISPOSAL
    FACILITIES—DEBT LIMITATIONS.
    City charter amendments pertaining to sewage disposal service
    and intermunicipality contracts entered into pursuant thereto
    which permit and provide for payment for such service in the
    future as rendered at rates set forth in contract and for ad-
    justment of rates *held,* not contrary to either constitutional
    or statutory limitations upon political subdivisions obligating
    themselves to pay for future sewage disposal services as ren-
    dered (Const. 1908, art. 8, §§ 20, 24; 1 Comp. Laws 1929,
    § 2228 *et seq.,* as amended).

19. SAME—CONTRACT BETWEEN COUNTY, CITIES, TOWNSHIPS AND
    VILLAGE—SEWAGE DISPOSAL SERVICE—APPROVAL.
    Contract between county, cities, townships and a village relative
    to sewage disposal service which was approved by the re-
    spective legislative bodies of the political subdivisions in-
    volved was not invalid for lack of approval by electors in
    view of subsequently enacted legislation validating contracts
    for such purpose so approved (Act No. 129, Pub. Acts 1943).

20. Appeal and Error—Supreme Court—Declaration of Rights—
Scope of Review.

In reviewing proposed system for a sewage disposal district on
appeal from decree declaring rights under various municipal
charter amendments, ordinances, and intermunicipal contracts,
Supreme Court concerns itself solely with legality of action
taken and contracts executed by the parties, not upon the
wisdom or practicality of the proposed system (3 Comp. Laws
1929, § 13903 *et seq.*).

21. Costs—Public Question—Intermunicipal Contracts—Sew-
age Disposal Service.

No costs are allowed on appeal from decree declaratory of rights
involved under intermunicipal contracts relative to sewage
disposal service, public questions being involved.

Appeal from Oakland; Holland (H. Russel), J.
Submitted April 14, 1943. (Docket No. 90, Calen-
dar No. 42,367.) Decided June 30, 1943.

Petition by Earl L. Clark, Oakland County Drain
Commissioner, against Cities of Royal Oak, Pleas-
ant Ridge, Huntington Woods, Ferndale, Berkley,
Hazel Park, Clawson, and Detroit, Village of Oak
Park, and Townships of Royal Oak, Southfield, and
Troy for a declaration of rights under certain con-
tracts relating to the construction of a sewage dis-
posal system. Decree for plaintiff. Defendant
Cities of Royal Oak, Pleasant Ridge, and Hunting-
ton Woods appeal. Affirmed.

*Harry J. Merritt*, Corporation Counsel (*Claude H.
Stevens*, of counsel), for plaintiff.

*William C. Hudson*, for defendant City of Royal
Oak.

*Arthur E. Moore*, for defendant Cities of Pleasant
Ridge and Huntington Woods.

*Paul E. Krause,* Corporation Counsel, and *Walter E. Vashàk,* Assistant Corporation Counsel, for defendant City of Detroit.

*Orph C. Holmes,* for defendant City of Ferndale.

*Stanton G. Dondero,* for defendant City of Hazel Park.

*Charles H. Losey,* for defendant City of Clawson and Troy Township.

*Franklin E. Morris,* for defendant Royal Oak Township.

*Morrow & Kull,* for defendant Southfield Township.

STARR, J. On December 9, 1942, plaintiff, as county drain commissioner of Oakland county, filed petition under Act No. 36, Pub. Acts 1929 (3 Comp. Laws 1929, § 13903 *et seq.* [Stat. Ann. § 27.501 *et seq.*]), for a declaration of rights in connection with the proposed establishment, operation, and financing of a sewage disposal system for the so-called "southeastern Oakland county sewage disposal district," herein referred to as the "district." The municipal corporations and townships named as defendants (except city of Detroit) are all political subdivisions located in Oakland county. The city of Detroit was made a party defendant because of certain contracts hereinafter referred to. There is no serious dispute as to the material facts involved.

In pursuance of Act No. 342, Pub. Acts 1939, as amended by Act No. 353, Pub. Acts 1941 (Comp.

Laws Supp. 1940 and 1942, § 2486–91 *et seq.*, Stat. Ann. 1942 Cum. Supp. § 5.2767 [1] *et seq.*), the board of supervisors of Oakland county adopted a resolution on April 21, 1942, which, as amended by the board on October 20, 1942, provided in part:

"Be it resolved, that the board of supervisors of the county of Oakland, Michigan, by a majority vote of its members-elect, does hereby authorize and direct that there be established, maintained and operated, under the provisions of Act No. 342, Pub. Acts 1939, as amended, and any other applicable acts, a system of sewer and sewage disposal improvements and services for the purpose of disposing of sewage from the cities of Royal Oak, Ferndale, Pleasant Ridge, Huntington Woods, Berkley, Hazel Park and Clawson; the village of Oak Park; the township of Royal Oak outside the village of Oak Park; sections 1, 12, 13, 24, 25 and 36 of the township of Southfield; and the west ½ of section 29, that part of sections 30 and 31 lying outside the city of Birmingham, all of sections 32, 33 and 34 and the west ½ of the west ½ of section 35 of the township of Troy, all of which territory lies within said county, and is to be known as 'southeastern Oakland county sewage disposal district.'

"Be it further resolved, that the county drain commissioner be and he is hereby designated as the agency of the county in connection with the establishment, maintenance and operation of such system of sewer and sewage disposal improvements and services, and as the person who shall have supervision and control of the management and operation of the same."

The district comprises an area of about 41 square miles and has a population of approximately 100,000. The sanitary and storm sewage from the district is now handled by a system of 10 so-called

county drains, established or purported to be established in pursuance of the provisions of the general drain law (Act No. 316, Pub. Acts 1923, as amended [1 Comp. Laws 1929, § 4838 *et seq.* (Stat. Ann. § 11.1 *et seq.*)]). Such county drains are the Royal Oak drain, Campbell road and Red Run improvement drain, Lawson drain, East Clawson storm sewer drain, Royal Oak No. 3 storm sewer drain, Royal Oak No. 7 storm sewer drain, Royal Oak No. 9 drain, Southfield No. 2 storm sewer drain, Southfield No. 6 storm sewer drain, and the Hugo Scherer drain. The last seven above-named drains empty into one or the other of the first three. Such three drains, *i.e.*, Royal Oak drain, Campbell road and Red Run improvement drain, and the Lawson drain, converge at or near the intersection of Campbell road and Twelve Mile road in Oakland county, and then empty into the unenclosed or open-ditch section of the Campbell and Red Run improvement drain, which open-ditch section is generally referred to as "Red Run" or "Red Run creek." The John R. road sewer, constructed by Royal Oak township, also empties into said Red Run creek near its intersection with John R. road. Red Run creek continues beyond the Oakland county line and flows into the Clinton river in Macomb county. Such river empties into Lake St. Clair at a point above the water intakes of Detroit, Highland Park, and certain Grosse Pointe communities.

It appears that in 1925 the city of Royal Oak built a sewage disposal plant which serves only a part of the city and is admitted to be inadequate for its present and future needs. A part of the Royal Oak sewage and all other sewage from the district is untreated. It is admitted that the emptying of the untreated sewage from the district into Red Run creek pollutes such creek and creates

an unsanitary condition and health menace. The water in the creek is described as black in color and as giving off an offensive odor. Along the creek banks are deposits of solids from the sewage. There was testimony that such untreated sewage has also polluted the Clinton river and the beaches of Lake St. Clair near the mouth of the river. There was also testimony indicating that the development of certain portions of the district had been retarded, because the Federal housing administration had refused to grant loans in any subdivision in the district where it did not already have mortgages, until some method of sewage disposal was provided. Having received repeated complaints, the State stream control commission adopted a resolution in November, 1941, directing that the defendant political subdivisions in the district "proceed forthwith to the taking of such steps individually or jointly as may be necessary to abate at the earliest possible date" the pollution of Red Run creek and Clinton river.

Chapter 17, § 5, of Act No. 316, Pub. Acts 1923, under which the 10 above-mentioned Oakland county drains were established, permitted their use for sewage disposal by any city, village or township in the district. However, Act No. 304, Pub. Acts 1941 (Comp. Laws Supp. 1942, § 4974 [Stat. Ann. 1942 Cum. Supp. § 11.138]), amended said chap. 17, § 5, to read in part as follows:

"From and after 3 years from the effective date hereof, it shall be unlawful for any municipality, industry, public or private corporation, individual, partnership association, or any other entity to continue to discharge or permit to be discharged into any county drain or intercounty drain of the State any sewage or waste matter capable of producing in said drain or drains detrimental deposits, objec-

tional odor nuisance, injury to drainage conduits or structures, or such pollution of the waters of the State receiving the flow from said drains as to injure livestock, destroy fish life or be injurious to public health: Provided, That nothing 'herein contained shall be construed to prevent the conveyance of sewage or other waste through drains or sewers that will not cause the above-named injuries.''

The fact that pollution now results from the discharge of sewage into Red Run creek rather indicates that after three years from the effective date of such amendment, the defendant political subdivisions in the district may not be permitted to discharge their untreated sewage into the county drains which empty into such creek.  The amendment emphasizes the necessity for prompt establishment of a satisfactory sewage disposal system. There appear to be two possible methods of handling sewage from the district.  One method would be to establish a treatment plant on Red Run creek near the intersection of Campbell road and Twelve Mile road.   The other method, which has been adopted by Oakland county, is described in the contract between the county and defendant political subdivisions thereof, as follows:

''It appears that the! most feasible method of treating said sanitary sewage is to divert the same before it passes into the open ditch portion of the Campbell road and Red Run improvement drain, into a new intercepting sewer to be constructed from at or near the intersection of the Campbell and Twelve Mile roads to the city of Detroit Seven Mile road sewer at the intersection of Andover avenue (with branch along the Twelve Mile road to the John R. road sewer) and from there through the' Seven Mile road and Connors creek sewers of the city of Detroit to the backwater gates south of Jef-

ferson avenue, from where it will flow into and through the Jefferson avenue intercepting sewer to the treatment plant of the city of Detroit for treatment and final disposal.''

To carry out such plan for establishing and operating a sewage disposal system for the district, on November 10, 1942, the board of supervisors of Oakland county adopted Ordinance No. Miscellaneous 1987, which provided for the construction of an intercepting sewer extending from the Twelve Mile road, at or near Campbell road, south to the Seven Mile road sewer in the city of Detroit, with a branch to the John R. road sewer, together with pumping station, meters, connections, regulators, and other necessary equipment. That portion of such intercepting sewer between Eight Mile and Seven Mile roads would be located within the city of Detroit. Such ordinance authorized plaintiff drain commissioner, as the ''agency of the county,'' to enter into a 50-year contract with the city of Detroit for the right to construct and maintain in Andover avenue a sewer extending from Eight Mile road to the city's Seven Mile road sewer and for the right to flow sewage from the district through such Seven Mile road sewer and the Connors creek sewer to the backwater gates south of Jefferson avenue. Such ordinance also authorized plaintiff to enter into another 50-year contract with the city of Detroit, for the final disposal of the district's sewage through the city's sewage treatment plant.

To provide in part for financing the cost of establishing such sewage disposal system, which was estimated at $1,567,000, the Oakland county board of supervisors, by the above-mentioned ordinance and pursuant to the provisions of Act No. 94, Pub. Acts 1933, as amended by Act No. 2, Pub. Acts 1939, and

Act No. 210, Pub. Acts 1941 (Comp. Laws Supp. 1940 and 1942, § 2486–22 *et seq.* [Stat. Ann. 1942 Cum. Supp. § 5.2731 *et seq.*]), authorized the issuance of county revenue bonds in the amount of $905,000, such bonds to be dated January 1, 1943, and to mature serially, the last maturity being January 1, 1973. The ordinance expressly provided that such bonds "shall not be a general obligation or indebtedness of the county of Oakland but shall be payable solely from the revenues derived from the operation of said sewage disposal system." The balance of the estimated cost of establishing the system and of acquiring flowage rights through certain Detroit sewers was to be financed by a Federal grant of $662,000. The above-mentioned ordinance also authorized the execution of a contract between the county, the several defendant political subdivisions of the district, and plaintiff. as county drain commissioner, whereby the county would furnish sewage disposal services and each political subdivision would dispose of its sewage through the proposed county system.

In furtherance of such plan for a sewage disposal system, plaintiff, as the agency of Oakland county, executed a contract with the city of Detroit on November 23, 1942, whereby the city granted the county the right to construct and maintain an intercepting sewer in Andover avenue (in the city of Detroit) between the Seven and Eight Mile roads and to connect the same with the city's Seven Mile road sewer. Such contract also provided for the flow of sewage from the district through the city's Seven Mile road sewer and Connors creek sewer to the backwater gates south of Jefferson avenue. For such flowage rights for the contract period of 50 years, the county agreed to pay the city $137,883.60 for a flowage of 30 cubic feet per second, which sum

represented the proportionate cost of said city sewers to be used by the county. Such contract also provided for additional charges for flowage in excess of 30 cubic feet per second. On the same date, November 23, 1942, plaintiff executed another contract with the city of Detroit whereby it agreed to receive the sewage from the district at the backwater gates south of Jefferson avenue and to dispose of the same through its sewage treatment and disposal plant. Such contract was for a like period of 50 years and provided for rates and charges to be paid the city and for the adjustment of such rates.

On the same date, November 23, 1942, plaintiff, as the agency of the county, also executed a contract between Oakland county, the defendant political subdivisions, and himself as drain commissioner, whereby the county agreed to proceed with the construction of the proposed sewage disposal system for the district; to furnish sewage disposal services to the defendant political subdivisions; and to enter into contracts with the city of Detroit for flowage rights and sewage disposal as above mentioned. The defendant political subdivisions agreed to dispose of all of their sanitary sewage through the proposed district system and to pay for such disposal at the rates fixed by the contract. Such contract provided for the continued use of county drains for the conveyance of sewage from the several political subdivisions to the proposed district sewage system. It also provided, in substance, that each political subdivision should raise the amount required to be paid the county for sewage disposal services by imposing charges for such services upon the users within its boundaries. The contract, which provided for the several, but not joint, liability of the political subdivisions, was to remain in full force and effect until the above-mentioned

county revenue bonds, including refunding bonds, should be paid and retired, but not to exceed 40 years.

The record indicates that by charter amendments and proper action of their respective governing bodies, the defendant political subdivisions authorized the execution of such contract with the county and plaintiff drain commissioner. It also appears that all defendant political subdivisions have executed such contract, or counterparts thereof, and that executed copies are held in escrow by the Oakland county treasurer pending decision on the present appeal. In the event the questions presented are determined in accordance with plaintiff's contentions, executed copies of the contract will be delivered to the respective parties. In case such questions are determined adversely to plaintiff's contentions, the executed copies of the contract will be cancelled.

In his petition for a declaration of rights, plaintiff set forth the proposed plan for the establishment of a sewage disposal system for the district; the action taken by the board of supervisors of Oakland county; the action taken by defendant political subdivisions; and the execution of the contracts with the city of Detroit and of the contract with defendant political subdivisions. Such petition also alleged that defendant city of Royal Oak had raised certain questions as to the legality of the establishment of the proposed sewage disposal system and as to the legality of the proposed bond issue and contracts above referred to.

The answers of the several defendants generally admitted the factual allegations of plaintiff's petition. In its answer the city of Royal Oak, while admitting the factual allegations, denied the legal conclusions urged by plaintiff. The answer of the city

of Detroit alleged that its two contracts with Oakland county were valid. The answers of the cities of Pleasant Ridge and Huntington Woods raised certain questions as to the legality and feasibility of the proposed plan and sewage disposal system. The answers of all other defendants, while admitting the factual allegations of the petition and requesting that the relief prayed for be granted, neither admitted nor denied the legal conclusions urged by plaintiff.

The case was brought on for trial, and testimony was presented as to the pollution of Red Run creek, Clinton river, and Lake St. Clair. The testimony regarding possible methods of disposing of sewage from the district indicated that the proposed plan for conveying the sewage through an intercepting sewer into the Detroit sewer system for final disposal through its treatment plant was undoubtedly the most practical and feasible method. Defendants presented no testimony contradicting the factual allegations of plaintiff's petition or testimony adduced by him.

The opinion and decree of the trial court determined the several questions presented, in accordance with plaintiff's contentions. The cities of Royal Oak, Pleasant Ridge, and Huntington Woods appeal from such decree. Other defendants have not appealed. This being a chancery case, we consider the same *de novo*.

The questions for review must be considered in connection with Act No. 129, Pub. Acts 1943 (Stat. Ann. 1943 Cum. Supp. § 5.2769 [1] *et seq.*), which became effective upon approval by the governor April 13, 1943. Such act provides:

"An act to provide for contracts between political subdivisions relative to sewers and sewage disposal, and to validate existing contracts of such nature.

*"The People of the State of Michigan enact:*

"SECTION 1. The term 'political subdivision' as herein used shall be deemed to mean any county, metropolitan district, city, village or township in this State.

"SEC. 2. Any 2 or more political subdivisions may contract for the joint ownership, use and/or operation of sewers and/or sewage disposal facilities. Any 2 or more political subdivisions may contract relative to the furnishing of sewage disposal services by 1 or more of such political subdivisions to the other political subdivision or subdivisions. Any such contract shall be authorized or approved by the legislative body of each contracting political subdivision and shall be effective for such term as shall be prescribed therein not exceeding 50 years.

"SEC. 3. Any contract heretofore made relative to the matters above set forth is hereby validated if such contract would have been valid had the same been made subsequent to the effective date of this act."

The first question presented is whether or not the establishment of the proposed sewage disposal system by Oakland county is a work of internal improvement prohibited by Const. 1908, art. 10, § 14, which provides in part:

"The State shall not be a party to, nor be interested in any work of internal improvement, nor engage in carrying on any such work."

The Constitution of 1850 contained a similar provision (art. 14, § 9), the history of which is discussed in *Young* v. *City of Ann Arbor,* 267 Mich. 241; *Attorney General, ex rel. Brotherton,* v. *Detroit Common Council,* 148 Mich. 71; and *Attorney General, ex rel. Barbour,* v. *Pingree,* 120 Mich. 550 (46 L. R. A. 407). Such prohibition against the State's engaging in a work of internal improvement also applies to Oakland county as a political subdivision

and instrumentality of the State. (See cases last above cited.) The precise question before us in the present case was raised in the *Ann Arbor Case,* but was passed as unnecessary to a decision. In the *Pingree Case* the constitutionality of Act No. 338, Local Acts 1899, authorizing the city of Detroit to construct, acquire, and operate a system of street railways, was challenged on the ground that it purported to authorize a work of internal improvement in violation of Const. 1850, art. 14, § 9. In discussing what constitutes a work of internal improvement prohibited by the Constitution, the court said, pp. 561, 562:

"Counsel suggest it is as competent to authorize the city to own and operate a street railway as to acquire and maintain a public park, waterworks, * * * or to construct drains or to build sewers. It may be somewhat difficult to draw the line as to what a municipality may properly do and what it may not do, but all the things above mentioned are authorized and defended because it is a proper exercise of the police power. * * * Drains and sewers and parks are all needed in the interest of public health."

In *Attorney General, ex rel. Brotherton,* v. *Detroit Common Council, supra,* proceedings were begun to restrain the construction of street railway tracks by the city of Detroit, on the ground that such construction constituted a work of internal improvement. In a divided opinion the court said, p. 87:

"It is also contended that, if we deny the right of a municipality to construct a street-railway system because it is a work of internal improvement, we must by the same reasoning deny its right to construct and maintain parks, waterworks, sewers, and a public lighting system. We answer this conten-

tion by saying that the right exercised in these latter instances is not prohibited by the constitutional provision under consideration. Those undertakings are not works of internal improvement within the meaning of the constitutional provision. One of the grounds upon which the right of a city to construct and maintain parks, waterworks, and sewers is that those undertakings contribute to the public health.''

In 4 McQuillin on Municipal Corporations (2d Ed.), p. 308, § 1545, it is stated:

''The establishment and maintenance of a sewer system by a municipality is usually regarded as an exercise of its police power. \* \* \* The drainage of a city in the interest of the public health and welfare is one of the most important purposes for which the police power can be exercised.''

In *Gillett* v. *McLaughlin,* 69 Mich. 547, we held that Act No. 227, Pub. Acts 1885, authorizing the establishment of drains, was not in violation of the constitutional provision prohibiting works of internal improvement. In that case we said, p. 551:

''Neither is it in violation of section 9, art. 14, Const. (1850), relating to the State engaging in works of internal improvement. So far as appears, the work is one of local improvement for the benefit of public health, and to be paid for by the townships and persons to be benefited thereby, and which has always been held proper, under our Constitution, when the improvement has been undertaken and carried forward under reasonable legal limitations and safeguards.''

See *Holland* v. *Clerk of Garden City,* 299 Mich. 465; *Attorney General, ex rel. Alexander,* v. *McClear,* 146 Mich. 45; *Smith* v. *Carlow,* 114 Mich. 67. See, also, 2 Proceedings and Debates of the Constitutional Convention of 1908, pp. 1066, 1067.

Furthermore, the establishment and operation of the proposed sewage disposal system is hereinafter determined to be a self-liquidating project, and we have repeatedly held that such a project is not a work of internal improvement and, therefore, not prohibited by the constitutional provision above quoted. See *Attorney General, ex rel. Eaves,* v. *State Bridge Comm.,* 277 Mich. 373; *Gilbert* v. *City of Traverse City,* 267 Mich. 257.

We conclude that the proposed sewage disposal system for the district is not a work of internal improvement prohibited by Const. 1908, art. 10, § 14.

Appellants next contend that Act No. 342, Pub. Acts 1939, under which Oakland county established the proposed sewage disposal system for the district, is unconstitutional as contravening Const. 1908, art. 10, § 12, which provides:

"The credit of the State shall not be granted to, nor in aid of any person, association or corporation, public or private."

Such prohibition against the State's loaning its credit also applies to Oakland county as a political subdivision and instrumentality of the State. *Attorney General, ex rel. Brotherton,* v. *Detroit Common Council, supra; Attorney General, ex rel. Barbour,* v. *Pingree, supra.* Plaintiff argues that there is no granting of credit by Oakland county in violation of the above constitutional provision, because the proposed sewage disposal system is established upon a self-liquidating basis and is in the interest of public health. The appealing defendants claim that the establishment of such system would constitute, in effect, a loan of credit by the county. The resolutions adopted by the board of supervisors of Oakland county, the contract between the county

and defendant political subdivisions, and the contracts with the city of Detroit clearly indicate that the proposed sewage disposal system is a self-liquidating county revenue project. The bonds to be issued for partial financing of the project will be payable only from revenues received and will not be primary obligations of the county. Being self-liquidating, this project does not constitute a grant of the county's credit in contravention of Const. 1908, art. 10, § 12. *Attorney General, ex rel. Eaves,* v. *State Bridge Comm., supra.* Furthermore, as Oakland county, in establishing the proposed sewage disposal system, is performing an authorized county function in respect to public health, the expending of money in the initial establishment of such system would not constitute a loan of the county's credit. There is no occasion for our passing upon the constitutionality of those provisions of Act No. 342, Pub. Acts 1939, relating to authorization by a county board of supervisors of loans and advances to cities, villages or townships, because in the present case the proposed sewage disposal system is a self-liquidating project, and the revenue bonds to be issued are not county obligations.

The next question is whether or not the granting to Oakland county by the city of Detroit of the right to maintain a sewer in Andover avenue for 50 years constitutes (1) a franchise which, under Const. 1908, art. 8, § 25, requires the approval of the electors of the city of Detroit, or (2) a franchise or license which, under Const. 1908, art. 8, § 29, is limited to 30 years. Such sections provide in part:

"SEC. 25.   *   *   *   Nor shall any city or village   *   *   *   grant any public utility franchise which is not subject to revocation at the will of the

city or village, unless such proposition shall have first received the affirmative vote of three-fifths of the electors of such city or village voting thereon at a regular or special municipal election."

"Sec. 29. No franchise or license shall be granted by any municipality of this State for a longer period than thirty years."

In its contract hereinbefore referred to, the city of Detroit grants Oakland county the right to construct and to maintain for 50 years a sewer in Andover avenue between the Eight Mile and Seven Mile roads. It also grants the county flowage rights through its Seven Mile road and Connors creek sewers. The precise question is whether or not such contract grants to Oakland county a franchise within the meaning of the above-quoted constitutional provisions. Const. 1908, art. 8, § 28, provides:

"No person, partnership, association or corporation operating a public utility shall have the right to the use of the highways, streets, alleys or other public places of any city, village or township for wires, poles, pipes, tracks or conduits, *without the consent of the duly constituted authorities* of such city, village or township; *nor to transact a local business therein without first obtaining a franchise therefor from such city, village or township.*"

In the present case the connecting sewer to be constructed and maintained by Oakland county in Andover avenue will be used to convey sewage from the district to the city's Seven Mile road sewer. As such connecting sewer will not serve residents of the city of Detroit, it is clear that Oakland county will not be transacting a local business within the city and, therefore, will not be obliged to obtain a franchise under said section 28. For use of the streets, such section does not require a franchise,

but only the "consent of the duly-constituted authorities of such city." Oakland county secured such consent through its contract which was executed by authorization of the Detroit common council.

The right granted Oakland county to construct and maintain a connecting sewer in Andover avenue was not a franchise but was merely a right incidental to the principal purposes of the two contracts between the county and city. To carry out such principal purpose, which was the transmission of the district's sewage to the Detroit treatment plant for final disposition, it was necessary to convey the sewage from the district to the city's Seven Mile road sewer. This connecting sewer in Andover avenue was necessary to enable Oakland county and the city of Detroit to perform and carry out their contracts relative to sewage transmission and disposal. In *People, ex rel. Maybury,* v. *Mutual Gas-Light Co. of Detroit,* 38 Mich. 154, we said:

"The exercise of the power of using streets for laying gas pipes is rather an easement than a franchise, and a similar power is used as often for private drainage and other purposes. * * * It is not a State franchise, but a mere grant of authority, which, whether coming from private owners, or public agents, rests in contract or license, and in nothing else."

See *Traverse City Gas Co.* v. *Traverse City,* 130 Mich. 17; *Attorney General* v. *Railway Co.,* 96 Mich. 65; *People, ex rel. Kunze,* v. *Railway Co.,* 92 Mich. 522 (16 L. R. A. 752).

In *Vossen* v. *City of St. Clair,* 148 Mich. 686, the city, which owned and operated an electric light plant, entered into a contract with a Port Huron power company to furnish electric current to be de-

livered at the St. Clair plant. The city granted the power company permission to erect and maintain poles, wires, cables, and other necessary equipment for the transmission of electricity through its streets and alleys. In holding that such use of the streets did not constitute a franchise we said, p. 690:

"In this court counsel for defendants have argued that the contract will not bear the construction that it confers a franchise, but the one only that it confers the right to bring to the place where it is to be delivered, namely, at the city plant, the current contracted to be delivered. We think the contract will bear the construction that a right of way through the city is intended to be given to defendants."

See, also, *White* v. *City of Grand Rapids,* 260 Mich. 267.

In *Washington Fruit & Produce Co.* v. *City of Yakima,* 3 Wash. (2d) 152 (100 Pac. [2d] 8, 103 Pac. [2d] 1106, 128 A. L. R. 159 [decided in 1940]), the plaintiffs began proceedings to enjoin the performance of a contract between the city and a power and light company. Under such contract the company had agreed to furnish street-lighting services to the city of Yakima. Plaintiffs contended that the contract granted a franchise in violation of the city's charter, which provided that no franchise or right to occupy and use the streets should be granted except by ordinance approved by a majority of the electors. In holding that such use of the streets by the power and light company did not constitute a franchise, the court said, pp. 157, 158, 161:

"While it is unquestionably true that, by definition, a franchise is said to be the privilege of using the streets, it does not necessarily follow that the converse is true, and that any right or privilege to use public streets, regardless of the manner in which it

arises or regardless of its purpose, is a franchise. The specific question before us now is whether or not the right in a public utility to use the streets of a municipality only in so far as is necessary in order to enable the utility to perform a valid contractual obligation to supply street lighting to the city, constitutes a franchise. * * *

"There is a practical unanimity in the cases upon the subject, to the effect that a contract made with a municipality for sale and delivery to it of light or power *is not a franchise,* even though there is an implied grant of such use of the city's streets as may necessarily be involved in the performance of the contract. * * *

"No 'right to occupy or use the streets,' was made the subject of a specific grant. Any such right, or license, was but an implied term necessary to the performance by the power company of its obligation to the city. The right, if it be called such, exists only as an incident to the contract for street lighting, and will cease to exist whenever the contract for any reason ceases to exist. *State, ex rel. Grant,* v. *City of Coffeyville,* 138 Kan. 909 (28 Pac. [2d] 1032)."

The case of *Bay City Plumbing & Heating Co.* v. *Lind,* 235 Mich. 455, cited by appellants, does not sustain their contention that the grant of a right to construct and maintain a sewer in Andover avenue constituted a franchise. Such case did not involve the question of a franchise but only the matter of obtaining permission to lay water pipes.

We are convinced that the contract granting Oakland county the right to construct and maintain a connecting sewer in Andover avenue did not constitute a franchise requiring the approval of the electors of the city of Detroit under Const. 1908, art. 8, § 25, or a franchise or license limited to 30 years under Const. 1908, art. 8, § 29.

Appellants question the authority of the city of Detroit to grant Oakland county flowage rights in its sewers for the purpose of conveying the district's sanitary sewage from the intersection of Andover avenue and Seven Mile road to the city's sewage disposal plant. They also question the authority of the city to contract with Oakland county for the treatment and final disposal of sewage originating outside the city's corporate limits. The execution of the two contracts, both of which were for a period of 50 years, was authorized by the board of supervisors of Oakland county and by the common council of Detroit. In the contract providing for flowage rights, the county agreed to pay a consideration of $137,833.60 for a flowage of 30 cubic feet per second, which sum represented the proportionate cost of the city's sewers to be utilized for such flowage. The testimony clearly indicates that the city's sewers, in which the county was given flowage rights, had large surplus capacity, and that the city was not disposing of sewer capacity which it required for its own use. The contract also provided for shutting off the flow of sewage from the district during heavy rainfall. The contract which provided for final disposal of the district's sewage through the city's treatment plant or system specified the rate or charge for such sewage disposal and for adjustment of rates. These two questions as to the authority of the city of Detroit to grant flowage rights in its sewers and to contract for the disposal of sewage arising outside the city must be considered in connection with Act No. 129, Pub. Acts 1943, hereinbefore quoted.

The city of Detroit and Oakland county are both political subdivisions within the meaning of the 1943 act, which expressly provides that such subdivisions may contract for the joint ownership, use, and/or operation of their sewers and sewage dis-

posal facilities for a period of 50 years. The act also provides that any contract made prior to its effective date "is hereby validated if such contract would have been valid had the same been made subsequent to the effective date of the act." We find no constitutional restriction against such legislative enactment, which is clearly applicable to the situation and contracts being considered in the present case.

In 1 Dillon on Municipal Corporations (5th Ed.), pp. 231, 232, § 129, it is stated:

"In general, however, the legislature may, by subsequent act, validate and confirm previous acts of the corporation otherwise invalid. If the act could have been lawfully performed or done under precedent legislative authority, the legislature may subsequently ratify it and give it effect."

"In the absence of special constitutional restrictions, the competency of the legislature to enact retrospective statutes to validate an irregular or defective execution of a power by a municipal or public corporation, is undoubted. * * * Subsequent legislative sanction within constitutional limits is equivalent to original authority." 2 Dillon on Municipal Corporations (5th Ed.), pp. 1524, 1526, § 948.

"The general proposition is established that the legislature of the State has power to legalize or ratify an *ultra vires* contract entered into by a municipal corporation for a public purpose, and when thus ratified the contract will be valid and binding, provided the legislature had the power to authorize the making of the contract in the first instance." 3 McQuillin on Municipal Corporations (2d Ed.), p. 972, § 1363.

See, also, *Chemical Bank & Trust Co.* v. *County of Oakland,* 264 Mich. 673; *People, ex. rel. Bristol,* v. *Ingham County Supervisors,* 20 Mich. 95.

We conclude that under such 1943 act, the two contracts in question between the city of Detroit and Oakland county are valid.

Appellants also contend that the contract between Oakland county, defendant political subdivisions, and plaintiff drain commissioner, is illegal and void because made without authority and for an unreasonable length of time. Such contract provided that it was to remain in force and effect "until all the bonds (including any refunding bonds)  *  *  * have been retired, but in no case for longer than 40 years." Appellants' contentions are answered by the 1943 act hereinbefore quoted, which expressly validates such a contract between political subdivisions and provides that it "shall be effective for such term as shall be prescribed therein not exceeding 50 years."  .

The charter amendments of the several cities in the district authorizing the contract between such cities and Oakland county were submitted and adopted November 3, 1942, at the time of the regular fall State and county elections. Act No. 279, § 21, Pub. Acts 1909 (1 Comp. Laws 1929, § 2257), as amended by Act No. 279, Pub. Acts 1939 (Comp. Laws Supp. 1940, § 2257 [Stat. Ann. 1942 Cum. Supp. § 5.2100]), provides:

"Any existing city charter, whether passed pursuant to the provisions of this act or heretofore granted or passed by the legislature for the government of a city, may from time to time be amended in the manner following: An amendment may be proposed by the legislative body of the city on a three-fifths vote of the members-elect or by an initiatory petition as herein provided, and in case the same is proposed by the legislative body of the city, then the same shall be submitted to the electors of such city at the *next regular spring or fall election*

*held in such city* which shall occur not less than 60 days after the proposal of such amendment.''

Appellants raise the question as to whether the words, ''next regular spring or fall election held in such city,'' mean a regular city election or the regular State and county election. Prior to the 1939 amendment, said section 21 provided for charter amendments to be voted upon at primary, regular or special elections. It is apparent that the amendment was intended to eliminate the submission of charter amendments at primary and special elections and to require submission at a regular city or State and county election. We are convinced that the legislature did not intend to restrict the submission of charter amendments to city elections. The election held on the Tuesday succeeding the first Monday of November in every even-numbered year is a regular fall election; * the election held on the first Monday of April in every odd-numbered year is a regular spring election.† Under the above act the charter amendments in question could have been submitted and voted upon at either the regular fall or regular spring elections held in the several cities in the district. Therefore, we conclude that the charter amendments of the several cities were legally submitted at the regular fall election in 1942.

Defendants further contend that the charter amendments adopted by the several cities in the district and the contract between Oakland county, defendant political subdivisions, and plaintiff drain commissioner violate the debt-limitation provisions of Const. 1908, art. 8, §§ 20, 24, and also violate sections 3, 4a, 4c, and 5 (e) of the so-called home-rule city act (Act No. 279, Pub. Acts 1909, as

---

* See 1 Comp. Laws 1929, § 2995 (Stat. Ann. § 6.262).—REPORTER.
† See 1 Comp. Laws 1929, § 2996 (Stat. Ann. § 6.263).—REPORTER.

amended [1 Comp. Laws 1929, § 2228 *et seq.* (Comp. Laws Supp. 1940, 1942, § 2228 *et seq.*, Stat. Ann. and Stat. Ann. 1942 Cum. Supp. § 5.2071 *et seq.*)]). Said sections 20 and 24 state:

"SEC. 20. The legislature shall provide by a general law for the incorporation of cities, and by a general law for the incorporation of villages; such general laws shall limit their rate of taxation for municipal purposes, and restrict their powers of borrowing money and contracting debts."

"SEC. 24. When a city or village is authorized to acquire or operate any public utility, it may issue mortgage bonds therefor beyond the general limit of bonded indebtedness prescribed by law: *Provided,* That such mortgage bonds issued beyond the general limit of bonded indebtedness prescribed by law shall not impose any liability upon such city or village, but shall be secured only upon the property and revenues of such public utility, including a franchise stating the terms upon which, in case of foreclosure, the purchaser may operate the same, which franchise shall in no case extend for a longer period than twenty years from the date of the sale of such utility and franchise on foreclosure."

It appears that the expense of $1,567,000 for constructing and establishing the proposed sewage disposal system for the district will be paid by a grant of $662,000 from the Federal government and by the issuance of Oakland county revenue bonds in the amount of $905,000. Such bond issue is not an obligation of the political subdivisions of the district. The charter amendments adopted by each of the cities in the district expressly provided that the amounts to be paid by the cities under the contract for sewage disposal "shall not constitute an indebtedness of the city within the meaning of any charter debt limitation." Under the contract with Oakland

county and plaintiff drain commissioner, each political subdivision in the district agrees to dispose of its sewage through the county system during a period not exceeding 40 years and agrees to pay the county for sewage disposal services on the basis of specified rates which are subject to revision.

The cities of Pleasant Ridge and Huntington Woods contend that the aggregate amount of the charges to be paid for sewage disposal services over a period of 30 but not exceeding 40 years would constitute an indebtedness of the municipalities exceeding their legal debt limit. This argument is based upon the premise that the continuing contract for sewage disposal, for which each city agrees to pay as the services are rendered, creates a present indebtedness for the aggregate amount of future payments. We cannot agree with such contention. The rule seems well established that the aggregate amount of future payments for sewage disposal services, to be paid for in instalments as rendered, does not constitute a present indebtedness for the aggregate amount of such payments. In considering a somewhat similar situation in *Bacon* v. *City of Detroit,* 282 Mich. 150, we said, p. 155:

" 'A contract for future services, to be paid for as rendered, is not an incurring of indebtedness.' *Ludington Water Supply Co.* v. *City of Ludington,* 119 Mich. 480, 491.

"See, also, *City of Denver* v. *Hubbard,* 17 Col. App. 346 (68 Pac. 993); *Walla Walla City* v. *Walla Walla Water Co.,* 172 U. S. 1, 19 (19 Sup. Ct. 77, 43 L. Ed. 341); 103 A. L. R. 1160, note."

In *Ludington Water-Supply Co.* v. *City of Ludington,* 119 Mich. 480, 491, we said:

"The charter does limit the authority of the council in respect to incurring indebtedness, but the rule

(recognized in *Putnam* v. *City of Grand Rapids,* 58 Mich. 416) that a contract for future services, to be paid for as rendered, is not an incurring of indebtedness, is supported by abundant authority. (Cases cited.)"

In 103 A. L. R. pp. 1160–1161, it is stated:

"According to the weight of authority, a continuing contract for the furnishing of electric, water, or other service to a municipality, for which the municipality agrees to pay in periodic instalments as the service is furnished, does not give rise to a present indebtedness for the aggregate amount of all the instalments to become due thereunder throughout the whole term of the contract, within the meaning of a constitutional or statutory limitation of municipal indebtedness, and such a contract is not rendered invalid by the fact that the aggregate of the instalments exceeds the debt limit."

See, also, 6 (Rev.) McQuillin on Municipal Corporations (2d Ed.), p. 60, § 2392.

The cases of *Niles Water Works* v. *Mayor, Recorder and Alderman of the City of Niles,* 59 Mich. 311, and *Putnam* v. *City of Grand Rapids,* 58 Mich. 416, cited by appellants, are not applicable to the question before us, because the decisions in such cases were based upon specific charter provisions. We find no constitutional or statutory limitation upon political subdivisions obligating themselves to pay for future sewage disposal services as rendered. The provisions of the contract between Oakland county, defendant political subdivisions, and plaintiff drain commissioner, relative to rates and charges for sewage disposal services, do not bring such contract within the debt-limitation provisions of the State Constitution and home-rule city act hereinbefore referred to. We conclude that neither the charter amendments nor the contract in question

authorize or permit the incurring of indebtedness in violation of constitutional and statutory debt limitations.

The question is raised as to whether or not the contract between Oakland county, defendant political subdivisions, and plaintiff drain commissioner was valid without the approval of the electors of the respective political subdivisions. We find no constitutional or statutory provisions requiring the electors in each political subdivision to approve such contract. Furthermore, Act No. 129, Pub. Acts 1943, hereinbefore quoted, expressly provides that a contract between political subdivisions for the use and operation of sewers and sewage disposal facilities "shall be authorized or approved by the legislative body of each contracting political subdivision." As the contract in question was properly authorized by the legislative body of each political subdivision in the district, we conclude that such contract was valid without the electors' approval.

Although the defendant cities, Pleasant Ridge and Huntington Woods, have executed the contract with Oakland county and plaintiff drain commissioner, their counsel argues in his brief that some other sewage disposal plan "90 to 100 per cent. efficient" should be adopted. We do not pass upon the wisdom or advisability of establishing the proposed sewage disposal system for the district, or upon its practicality. Our province is only to determine the legality of the action taken and contracts executed by the parties.

For the reasons herein stated, the decree of the trial court is affirmed. Public questions being involved, no costs are allowed.

Boyles, C. J., and Chandler, North, Wiest, Butzel, Bushnell, and Sharpe, JJ., concurred.