341 Mich. 607 (1954)
67 N.W.2d 788
CHARTER TOWNSHIP OF WARREN
v.
MUNICIPAL FINANCE COMMISSION.
Calendar No. 46,306.
Supreme Court of Michigan.
Writ denied December 29, 1954.
Carroll & Gallagher, for plaintiff.
Frank G. Millard, Attorney General, Edmund E. Shepherd, Solicitor General, and G. Douglas Clapperton, Assistant Attorney General, for defendant.
Amici curiae:
Miller, Canfield, Paddock & Stone (John H. Nunneley and Stratton S. Brown, of counsel).
BOYLES, J.
Warren township in Macomb county is a charter township, incorporated as such April 3, 1950, by a vote of its qualified electors on a referendum under PA 1947, No 359, § 2, as then amended *609 by PA 1949, No 70.[1] At an election held April 2, 1954, the qualified electors of said township voted in favor of the following bonding propositions:
"1. Township Garage Proposition
"Shall the Charter Township of Warren, Macomb county, Michigan, borrow the sum of not to exceed $271,000 and issue its bonds therefor for the purpose of erecting and furnishing a township garage and acquiring a site therefor in the township?
"2. Police Station Proposition
"Shall the Charter Township of Warren, Macomb county, Michigan, borrow the sum of not to exceed $158,000 and issue its bonds therefor for the purpose of erecting and furnishing a police station in the township?
"3. Fire Station Proposition
"Shall the Charter Township of Warren, Macomb county, Michigan, borrow the sum of not to exceed $171,000 and issue its bonds therefor for the purpose of erecting and furnishing 2 fire stations and acquiring sites therefor in the township?
"4. Township Hall Proposition
"Shall the Charter Township of Warren, Macomb county, Michigan, borrow the sum of not to exceed $300,000 and issue its bonds therefor for the purpose of erecting and furnishing a township hall and acquiring a site therefor in the township?"
At the same election the following proposition was separately submitted to and adopted by the qualified voters:
"GENERAL IMPROVEMENT MILLAGE INCREASE
"Shall the limitation on the total amount of taxes which may be assessed against all property in the Charter Township of Warren, Macomb county, *610 Michigan, for all purposes, except taxes levied for the payment of principal and interest on obligations incurred prior to December 8, 1932, be increased, as provided by section 21, article 10, of the Constitution of Michigan,[2] by 1/10 of 1% (0.1%) (1 mill) of the assessed valuation, as equalized, of all property in the township for a period of 12 years from 1954 to 1965, both inclusive, for the purpose of providing funds to pay the principal and interest on bonds of the township in the principal amount of not to exceed $900,000, to be issued for the purpose of erecting and furnishing a township garage, police station, 2 fire stations and a township hall, and acquiring sites therefor, in the township?"
On July 27, 1954, the township board adopted a resolution authorizing the issuing of $900,000 public building bonds, the proceeds of the sale thereof to be deposited in separate earmarked construction funds to provide money for the construction of said separate projects hereinbefore referred to. At the same meeting the township board adopted a form of notice of sale of said bonds. Thereupon the township clerk made application to the State municipal finance commission for permission to issue said bonds and for its approval of said form of notice of sale, as the statutory condition precedent to advertising said bonds for sale or completing a sale thereof.[3] The municipal finance commission issued an order permitting the issuance of said bonds but refused to approve the form of notice of sale as submitted by plaintiff. It did, however, approve a notice of sale in the same form as that adopted by the township board, except for the deletion of the following paragraph:
*611 "The said bonds are payable from ad valorem taxes subject to such limitation on said taxing power as may result from the provisions of section 21, article 10 of the Michigan Constitution and the Michigan property tax limitation act. The qualified electors of said Charter Township of Warren, Macomb county, Michigan, at a special election held on April 2, 1954, voted an increase in the constitutional tax-rate limitation of 1/10 of 1% (1 mill) of the assessed valuation, as equalized, of all property in the township for a period of 12 years, from 1954 to 1965, both inclusive, for the sole purpose of providing funds to pay the principal and interest on bonds of the Charter Township of Warren herein authorized."
The commission inserted the following sentence in lieu thereof:
"The bonds will be general obligations of Charter Township of Warren payable from ad valorem taxes without limitation as to rate or amount."
The municipal finance commission took the position that charter townships incorporated under PA 1947, No 359, as amended, are not subject to the provisions of article 10, § 21 of the Michigan Constitution (1908), called the "15-mill constitutional amendment;" and that section 1a, ch 7, PA 1943, No 202 (the municipal finance act), as added by PA 1945, No 300, and amended by PA 1952, No 145, applied to charter townships, and to the notice of sale here involved, wherein it states:
"No limitation in any statute or charter shall prevent the levy and collection of the full amount of taxes required by this section for the payment of debts, but nothing herein shall authorize the levy of a tax for any other purpose exceeding the existing statutory or charter tax limitation."
Thereupon Warren township filed in this Court this petition for a writ of mandamus to compel the *612 municipal finance commission to approve the notice of sale of the proposed bonds in the form submitted to it by said township. On leave granted we issued an order directing the municipal finance commission to show cause why the writ should not be granted as prayed for. Issue has been joined thereon, briefs filed, and the matter submitted as a motion. It is conceded that bond attorneys have refused to approve the proposed bonds as unlimited tax bonds until the status of Warren township, a charter township, should be clarified in relation to article 10, § 21, Constitution (1908), as to whether the limitation of the total amount of taxes which may be assessed against property in any 1 year applies to said township.
The township claims that its tax rate in all particulars is subject to article 10, § 21, of the Constitution (1908), and the fact that it is a charter township having a statutory charter providing a different tax-rate limitation than that provided by said constitutional amendment does not remove the township from said constitutional limitation.
The attorney general, on behalf of the municipal finance commission, claims, on the contrary, that a charter township incorporated under PA 1947, No 359, as amended, is not subject to the tax-rate limitation in article 10, § 21, of the Constitution (1908); and that the State municipal finance commission correctly construes the following exception in the tax limitation amendment wherein it provides:
"That this limitation may be increased for a period of not to exceed 20[4] years at any one time, to not more than a total of 5% of the assessed valuation, * * * when provided for by the charter of a municipal corporation."
*613 The 15-mill constitutional amendment in itself provides for exceptions to limiting to 1-1/2% of the assessed valuation the amount of taxes that may be assessed in any 1 year against property for all purposes. The first exception applies to taxes levied for the payment of principal and interest "on obligations heretofore incurred," to be "separately assessed in all cases." It is not involved in this case. The other exceptions are covered in the following proviso:
"Provided, That this limitation may be increased for a period of not to exceed 20[4] years at any one time, to not more than a total of 5% of the assessed valuation, by a majority[4a] vote of the electors of any assessing district, or when provided for by the charter of a municipal corporation."
The proviso is permissive, and where it applies it constitutes an exception to the general tax limitation in the enacting part of the amendment.
"It is true the office of a proviso in a statute is, usually, to explain, modify, qualify, the enacting clause, and not to enlarge it. While this is the appropriate and the presumed office of a proviso, it may be clearly designed to perform some other office. And so it has been held that a proviso may be construed to enlarge the scope of the act, or to be equivalent to an independent enactment. 36 Cyc, p 1161 et seq." People v. American Central Insurance Co., 179 Mich 371, 376.
Under 2 separate and plainly-defined circumstances this proviso permits an increase, to not more than 5% of the assessed valuation, for a period of not more than 20[4] years, in the amount of the taxes that may be assessed against property in any 1 year. The first circumstance, which is not involved in the instant case, is an increase by a majority vote of the electors in the assessing district. The other is *614 when the increase is "provided for by the charter of a municipal corporation." The precise question before us is whether this last exception, sometimes heretofore called the "third exception," applies to Warren township.
Warren township is a municipal corporation. The legislature, in providing for its incorporation as a so-called charter township, has expressly so declared. PA 1947, No 359, § 1.[*] Said section also expressly provides that the act "shall constitute the charter of such municipal corporation."
The question before us then is, what are the provisions, if any, in said act, as to the total amount of taxes that may be assessed for all purposes against property in said township; because that exception in the proviso applies only when the charter of a municipal corporation (in this case the statute) so provides.
Said statute (PA 1947, No 359, as amended) provides for assessments for taxes in charter townships. Section 14 of said act, as amended by PA 1949, No 70,[5] authorizes a charter township to acquire property for public purposes, and provides:
"That no taxes shall be levied to acquire any such property, public building, park, or facility, unless such levy shall be approved by a majority of the electors of the township voting thereon at any regular or special township election."
It is conceded that a majority of the electors has approved the levy here involved.
Section 14a of said act, as added by PA 1953, No 188,[6] provides that the township may borrow money and issue bonds on the credit of the township to acquire *615 such improvements upon approval thereof by a majority of the electors,
"Provided, however, That the net bonded indebtedness of the township incurred for all public purposes shall at no time exceed 10% of the assessed value of all real and personal property in the township: * * * Provided further, That such bonds shall be issued subject to the provisions of Act No 202 of the Public Acts of Michigan 1943, as amended."[7]
Section 27 of said act, as amended by PA 1953, No 188,[8] authorizes the township board, not later than November 1st of each year, to appropriate and provide for a levy of the amount necessary to be raised by taxes for municipal purposes of the township, and states as follows:
"which levy shall not exceed 1/2 of 1% of the assessed valuation of all real and personal property subject to taxation in the township: Provided, That the electors of each charter township shall have power to increase such tax levy limitation to not to exceed a total of 1% of the assessed valuation of all real and personal property in the township for a period of not to exceed 20 years at any one time."
It is obvious that the legislative charter of Warren township in itself provides for a tax limitation.
The township in its petition for mandamus takes the position that:
"The municipal finance commission is incorrect under the law, in that the only municipalities excepted from the operation of the 15-mill constitutional amendment, by virtue of the decisions of this Court in School District of the City of Pontiac v. City of Pontiac, 262 Mich 338, and City of Hazel *616 Park v. Municipal Finance Commission, 317 Mich 582, are incorporated cities and villages."
It is difficult to understand how the township can find any support for said position from either of said decisions. In the Pontiac Case, after holding that article 10, § 21, of the Constitution (the tax limitation amendment), had been legally adopted, the Court said (pp 345-347, 349, 351):
"We are asked to construe in certain particulars this amendment to the Constitution. * * *
"This appeal presents for determination the proper construction of the phrase `or when provided for by the charter of a municipal corporation' as embodied in the context of this amendment. The charter of the city of Pontiac adopted under the so-called home-rule act (CL 1929, § 2228 et seq.),[**] vested the city with power to levy annually a general tax upon real and personal property not exceeding 2% of the assessed valuation. The tax so authorized was for the sole use of the city. The question now presented is this: Does the 1932 constitutional amendment limit the annual tax assessment for State, county, school, and city purposes to 1-1/2% in the city of Pontiac (except taxes levied to meet existing indebtedness); or does the city, because of the exception contained in the above-quoted phrase, still have power to tax for municipal purposes to the maximum charter limitation of 2%? * * *
"This brings us to what a fair reading of the amendment indicates is a third exception to the general limitation of taxation, which exception the framers and adopters of this amendment seemingly deemed essential, and which we think gave rise to including in the amendment the words `or when provided for by the charter of a municipal corporation.' * * * At the expense of repetition, we state again that (disregarding the exception of taxes levied for *617 payment of debts), we think the amendment must be construed as though it read:
"`The total amount of taxes assessed against property for all purposes in any 1 year shall not exceed 1-1/2% of the assessed valuation of said property: Provided, That this limitation may be increased for a period of not to exceed 5 years at any one time to not more than a total of 5% of the assessed valuation, by a 2/3 vote of the electors of any assessing district, or (that this limitation may be increased) when provided for by the (present or future) charter of a municipal corporation.'
"In the foregoing, reference has been made to the so-called home-rule cities, but we think the same result would follow as to cities having special charters with like provisions as to the exercise of the power of taxation. The result of the above construction is that the 1932 amendment neither increased nor decreased the charter power of a city to levy taxes for its municipal purposes. * * *
"With villages and fourth-class cities much the same result follows from the foregoing construction of the 1932 amendment."
In the Hazel Park Case, supra, the city sought mandamus to compel the State municipal finance commission to approve a notice of sale of bonds, "payable from ad valorem taxes within the 1.8% charter tax limit for city purposes." In lieu thereof the commission inserted the following:
"The bonds will be the general obligations of the city payable from ad valorem taxes without limitation as to rate or amount."
The municipal finance act[9] provides:
"No limitation in any statute or charter shall prevent the levy and collection of the full amount of *618 taxes required by this section for the payment of debts, but nothing herein shall authorize the levy of a tax for any other purpose exceeding the existing statutory or charter tax limitation."
Relying on the above-quoted provision in the municipal finance act, in the Hazel Park Case we said (p 606):
"The provision in the municipal finance act, supra, that no limitation in any statute or charter shall prevent the levy and collection of the full amount of taxes to pay the bond issue, must be read into plaintiff's charter, and controls the instant case notwithstanding the 1.8% tax limitation in the charter. * * *
"We conclude that the 15-mill constitutional limitation does not apply here, but on the contrary the exceptions, as construed herein, control decision. The writ is denied."
See, also, Council of the City of Saginaw v. Saginaw Policemen and Firemen Retirement System Trustees, 321 Mich 641.
The Pontiac and Hazel Park Cases do not support the position taken by the township, under the circumstances of the case at bar. They do not hold, as claimed by the township, that incorporated cities and villages are the only municipalities excepted from the operation of the 15-mill constitutional amendment. On the contrary, the Pontiac Case states that with villages and fourth-class cities the same result follows the construction therein given to the constitutional amendment. Charter townships are in the same category.
We are not in accord with the township's claim that its notice of sale should provide that:
"The said bonds are payable from ad valorem taxes subject to such limitation on said taxing power as may result from the provisions of section 21, *619 article 10 of the Michigan Constitution and the Michigan property tax limitation act."
As confined to the issue now before us there is no essential difference between charter townships and incorporated cities and villages. All are municipal corporations. Fourth-class cities have legislative charters (PA 1895, No 215, as amended);[10] likewise, "general law" villages (PA 1895, No 3, as amended).[11] The 15-mill tax amendment makes no distinction between charters of municipal corporations, in the exceptions to the 15-mill constitutional limitation.
Mandamus denied. No costs, a public question being involved.
BUTZEL, C.J., and CARR, BUSHNELL, SHARPE, REID, DETHMERS, and KELLY, JJ., concurred.
NOTES
[1] For said PA 1947, No 359, prior to subsequent amendments, see CL 1948, §§ 42.1-42.34 (Stat Ann 1947 Cum Supp §§ 5.46 [1]-5.46[34]). For said act including subsequent amendments, except PA 1954, No 169, see Stat Ann 1953 Cum Supp §§ 5.46(1)-5.46(34). The amendment by PA 1954, No 169, has no bearing on this case.
[2] See amendment of 1948 (PA 1949, p 688 [Stat Ann 1953 Cum Supp, art 10 § 21]).
[3] PA 1943, No 202, ch 7, § 1a, as added by PA 1945, No 300, and amended by PA 1952, No 145 (CLS 1952, § 137.1a [Stat Ann 1953 Cum Supp § 5.3188(45a)]).
[4] Changed in 1948 by amendment to article 10, § 21.
[4a] See footnote page 612.
[*] As amended by PA 1949, No 20 (CLS 1952, § 42.1 [Stat Ann 1953 Cum Supp § 5.46(1)]).  REPORTER.
[5] CLS 1952, § 42.14 (Stat Ann 1953 Cum Supp § 5.46[14]).
[6] Stat Ann 1953 Cum Supp § 5.46(14a).
[7] Municipal finance act, CL 1948 and CLS 1952, §§ 131.1-137.3 (Stat Ann 1949 Rev and Stat Ann 1953 Cum Supp §§ 5.3188[1]-5.3188[47], inclusive).
[8] Stat Ann 1953 Cum Supp § 5.46(27).
[**] CL 1948 and CLS 1952 § 117.1 et seq. (Stat Ann 1949 Rev and Stat Ann 1953 Cum Supp § 5.2071 et seq.).  REPORTER.
[9] PA 1943, No 202, ch 7, § 1a, as added by PA 1945, No 300, and amended by PA 1952, No 145 (CLS 1952, § 137.1a [Stat Ann 1953 Cum Supp § 5.3188 (45a)]).
[10] CL 1948, § 81.1 et seq., as amended (Stat Ann 1949 Rev and Stat Ann 1953 Cum Supp § 5.1591 et seq.).
[11] CL 1948, § 61.1 et seq., as amended (Stat Ann and Stat Ann 1953 Cum Supp § 5.1201 et seq.).