COHN *v.* COUNTY OF OAKLAND.

1. Municipal Corporations—Joint Sewage-Disposal System—Taxation.

Decree upholding contract between county and a city and 3 townships located within the county for establishment of a joint sewage-disposal system, to be financed by a bond issue with costs prorated upon such 4 municipalities in accordance with basis stated in the agreement is affirmed by the Supreme Court, Dethmers, C. J., and Kelly, Carr, and Edwards, JJ., for affirmance but modifying trial court's decree dismissing bill by deleting portion thereof declaring the provision of the Constitution limiting taxation of property to 15 mills not violated and Smith, Black, Voelker, and Kavanagh, JJ., for reversal on the ground that such provision of the Constitution prohibited the levy of a tax by the township to meet the obligations imposed by the contract (Const 1908, art 10, § 21, as amended in 1948; CL 1948, § 601.26; PA 1957, No 185, § 12).

2. Costs—Joint Sewage-Disposal System—Contracts.

No costs are allowed in suit to determine validity of contract between county and a city and 4 townships, all located within the county, for purpose of establishing a joint sewage-disposal system (PA 1957, No 185, § 12).

Appeal from Oakland; Hartrick (George B.), J. Submitted July 30, 1958. (Docket No. 62, Calendar No. 47,807.) Decided October 13, 1958. Rehearing denied December 2, 1958. See 355 Mich 610.

Bill by Irwin I. Cohn against the County of Oakland, its board of supervisors, its board of public works, the Townships of Farmington, West Bloomfield and Southfield and the City of Keego Harbor to enjoin proceedings under proposed plan for a

---

References for Points in Headnotes

[1] 37 Am Jur, Municipal Corporations § 135.
   Power of municipalities or other political subdivisions to engage in a joint project or enterprise. 123 ALR 997.
[2] 14 Am Jur, Costs § 35.

sewage-disposal system, to invalidate certain contracts between governmental agencies and to determine void any proposed tax levy within the district. Bill dismissed. Plaintiff appeals. Affirmed by an equally divided court.*

*Avern L. Cohn,* for plaintiff.

*Harry J. Merritt,* Corporation Counsel, for defendant Oakland County.

*Claude H. Stevens,* for defendants Oakland County, its board of supervisors, its board of public works and the Township of West Bloomfield.

*Thomas J. Dillon, Jr.,* for defendant City of Keego Harbor.

*Joseph T. Brennan, Jr.,* for defendant Township of Farmington.

*James C. Allen,* for defendant City of Southfield, successor of Township of Southfield.

*Amicus Curiae* on rehearing: State of Michigan, by *Paul L. Adams,* Attorney General, *Samuel J. Torina,* Solicitor General, and *G. Douglas Clapperton* and *Florence N. Clement,* Assistants Attorney General.

Carr, J. *(for modification and affirmance).* Acting through its board of supervisors the county of Oakland has established a department of public works pursuant to authority granted by PA 1957, No 185 (CL 1948, § 123.742 *et seq.* [Stat Ann 1957 Cum Supp § 5.570(1) *et seq.*]). The statute contemplates the appointment of a board of public works which shall be in immediate control of the department, subject to general supervisory authority granted to the board of supervisors. Power is given to a

---

* See CL 1948, § 601.26 (Stat Ann § 27.46).—Reporter.

county proceeding under the statute to acquire, operate, and maintain water supply and sewage-disposal systems. Among the methods provided for financing any such work of public improvement deemed essential for the public health and welfare is:

"By the issuance of bonds in anticipation of the collection of amounts to become due under contracts whereby a municipality or municipalities agree to pay certain sums toward the cost of the acquisition, improvement, enlargement, or extension of any project which may be made hereunder." CL 1948, § 123.741 (Stat Ann 1957 Cum Supp § 5.570[11]).

In accordance with the language quoted specific authority is given for the making of a contract between a county and any one or more of its municipalities for the payment of the cost of a water supply, or sewage disposal, system over a period not exceeding 40 years. By such contract each municipality, which term by express provision of the statute includes a township, is required to pledge its full faith and credit for the payment of obligations that may be issued pursuant to the statute, in reliance on such contracts, and to levy each year a tax which is declared not to be "within any statutory or charter limitation," in an amount sufficient to permit discharge of its contractual obligation. It is also provided that any such municipality may raise funds in any one or more of the following methods:

"(a) By service charges to users of the system;
"(b) By special assessment upon lands benefited;
"(c) By the exaction of charges for the connection of properties, directly or indirectly, to the system;
"(d) By setting aside any State collected funds disbursed to the municipality and usable therefor; and
"(e) By setting aside any other available moneys." CL 1948, § 123.742 (Stat Ann 1957 Cum Supp § 5.570[12]).

The county is required to advance funds, if neces-sary, for the payment of principal and interest of bonds, subject to the right to be reimbursed for any advances so made.

In the instant case the department of public works prepared and submitted to the board of supervisors plans for the establishment of the Farmington sewage-disposal system for the purpose of serving the city of Keego Harbor, the township of Farmington, and portions of Southfield and West Bloomfield townships in said county, such area to be known as the Farmington sewage-disposal district. The plan contemplates construction work to be carried on by the county through its department of public works. The total cost is estimated at $4,900,000, and it is proposed, pursuant to resolution of the board of supervisors which duly approved said plan, to issue bonds in that amount, maturing serially over a period of 30 years.

Under date of November 1, 1957, the board of public works of Oakland county entered into an agreement with the defendant townships and city, subject to approval by the board of supervisors of Oakland county, for the establishing of the sewage-disposal system, the financing thereof through the proposed bonding issue, the division of the cost among the 4 municipalities named in accordance with a definite basis therein set forth, and the payment of the amount charged to each such municipality in 30 annual instalments beginning with the year 1960. The board of supervisors, by appropriate resolution reciting the contract with the municipalities, authorized the issuance of the bonds, subject to the approval of the Michigan finance commission. It further appears from the record that each of the defendant townships, by its township board, adopted a resolution fixing the amount of the charge for connecting property within such township to the disposal sys-

tem.    The Southfield township board fixed the amount of such charge at $200, and each of the other townships specified $250. No question is raised as to action taken on the part of the city of Keego Harbor.

The plaintiff in the instant case is the owner of property located in that portion of West Bloomfield township included within the sewage-disposal district.    He filed his bill of complaint in the circuit court of Oakland county claiming that the connection charges fixed by the resolutions adopted by the boards of the defendant townships are unlawful because not proportional to the cost of making such connections, that the contract between the county and defendant townships is void because meeting the obligation of each township as thereby created will require the levy of a tax in excess of the maximum limited under article 10, § 21, of the State Constitution (1908), and because the obligation on the part of the county to advance money if necessary for the payment of principal and interest of bonds when due, subject to the right of reimbursement, is in violation of article 10, § 12, of the Constitution (1908), on the theory that it involves a pledging of the county's credit.    Plaintiff sought a decree sustaining his respective contentions and enjoining defendants from proceeding with the construction and financing of the sewage-disposal system.

On the hearing of the case testimony was offered tending to establish the advantages of the proposed disposal system from the standpoint of the public health as well as in connection with the establishing of new homes, the protection of those previously established in the territory concerned, and the general development of the lands within the district. The record indicates that a considerable proportion of such lands is not, because of percolation, adapted to the use of septic tanks as a method of sewage disposal.    The circuit judge filed a written opinion hold-

ing that plaintiff's claims were not well-founded, and entered a decree specifically sustaining the validity of the connection charges, and the taxing authority of the townships, and further denying that the obligation assumed by the county of Oakland constituted a pledge of its credit in violation of article 10, § 12, of the State Constitution (1908). Plaintiff's bill of complaint was dismissed, and he has appealed.

It is the claim of appellant, in substance, that the so-called connection charges imposed pursuant to the resolutions of the township boards must bear reasonable relation to the actual cost of making connections between private property and the sewage-disposal system. As before pointed out, the raising of money by the exaction of such charges is specifically authorized by the statute. Significant in this regard as to the legislative intent is the inclusion of words indicating the right to make the charge whether the connection is made "directly or indirectly." The terms used indicate that the legislature had in mind not merely a fee for making a physical connection but, rather, an initial charge for the rendition of service. The holding of this Court in *City of North Muskegon* v. *Bolema Construction Company, Inc.*, 335 Mich 520, is significant in this regard. There, by ordinance of the plaintiff city, the charge of $100 for making a connection with a public sewer was made. As against the objection that such sum was excessive and disproportionate to the actual cost, it was said (p 527):

"In our opinion the amount of the charge is within the sound discretion of the city officials, especially when considered in relation to the objectives of the program in maintaining the system and paying off the bonds in the manner required by statute."

The prior case of *Wolgamood* v. *Village of Constantine*, 302 Mich 384, was cited with approval.

The reasons underlying said decisions are applicable here. The establishment of the sewage-disposal district is unquestionably conducive to the public health and welfare and, hence, tending to the betterment of living conditions in the territory affected. The charge of which plaintiff complains is actually made as a condition precedent to the reception of the benefits that may reasonably be anticipated as resulting. So viewed, it may not be regarded as excessive or otherwise unlawful.

Article 10, § 21, of the Michigan Constitution (1908), as amended at the general November election in 1948, reads as follows:

"The total amount of taxes assessed against property for all purposes in any one year shall not exceed one and one-half per cent of the assessed valuation of said property, except taxes levied for the payment of interest and principal on obligations heretofore incurred, which sums shall be separately assessed in all cases: Provided, That this limitation may be increased for a period of not to exceed twenty years at any one time, to not more than a total of five per cent of the assessed valuation, by a majority vote of the electors of any assessing district, or when provided for by the charter of a municipal corporation: Provided further, That this limitation shall not apply to taxes levied in the year 1932."

Appellant's principal contention is based on the claim that the defendant townships cannot keep within the constitutional limitation as above set forth and still raise sufficient funds to meet the obligations assumed under the contract with the county. Whether in any of said townships action has been taken with the end in view of increasing the limitation by a vote of the electors does not appear, nor is any specific showing made as to the effect of such possible increases. There is no proof that the assumed obligations may not be met in future years by the levy of

taxes not in excess of the alleged constitutional limitation on which plaintiff relies, or by the raising of funds other than by taxation.

As before pointed out, the legislature in adopting the act of 1957 authorized several methods that might be adopted to raise necessary funds. Included therein are the making of service charges to users of the system and special assessments upon lands benefited. Defendant townships are also at liberty to use funds that may be disbursed thereto by the State and other available moneys. It is a fair inference that the legislature intended to authorize each municipality assuming liability contemplated by the statute to meet its obligations other than by resort to taxation, if it wishes to do so. Appellant's argument is predicated, at least in part, on the claim that the so-called connection charges authorized by the township boards concerned are invalid and, hence, may not be lawfully collected. For the reasons above stated, such claim is not well-founded. Testimony introduced on the hearing in circuit court indicated that each of the 3 townships concerned will be able in the future to raise necessary funds in accordance with the act of the legislature by procedures that may not be claimed to violate the constitutional restriction. Commenting on this proof, the circuit judge said in his opinion:

"The administrative officers of the townships have estimated the revenues from the project plus the contingency of a township levy within legal limitations will be sufficient to meet the obligation to the county. The court is in no position nor is it justified in drawing a contrary conclusion."

The statement is supported by undisputed proofs, and we are in accord therewith.

The factual situation presented here does not require, or render proper, the consideration and de-

termination of defendants' claims that the townships of the State are chartered municipalities within the meaning of article 10, § 21, of the Constitution (1908, as amended), that the charter of each is found in legislative enactments of general application, that the legislature may by statute, constituting a part of such charter, authorize an increase of the 15-mill tax limitation, and that PA 1957, No 185, has accomplished that result as to the defendant townships. Attention is directed to *Kent County Board of Education* v. *Kent County Tax Allocation Board*, 350 Mich 327, in support of the claim made. However, the county school district involved in that action was created by vote of its electors for educational purposes, pursuant to statutory authority. In taking such action the ballot used specified that the annual tax to be levied should be limited to "1/2 mill." Commenting on the situation, it was said (p 330):

"The decisive question is whether the school electors, having voted to effectuate the ballot-identified sections of the code and having provided that 'any annual property tax levied for administration shall be limited to 1/2 mill,' thereby voted legal authorization of an annual tax—in addition to the constitutionally permissible 15 mills—for the purposes of the mentioned sections of the code."

The question was answered in the affirmative. It thus appears that the voters had approved an increase in the rate of taxation in the district over and above the constitutionally limited rate. Presumably the argument made that all townships of the State are chartered municipalities would apply with equal force to all counties and school districts. It is unnecessary in this case to discuss the effect of such a theory, if adopted, on the interpretation and application of the 15-mill amendment to the Constitution. It may be further noted that there is nothing

before us to indicate that any of the 3 defendant townships are charter townships, incorporated as such under the provisions of PA 1947, No 359 (CL 1948 and CLS 1956, § 42.1 *et seq.* [Stat Ann 1957 Cum Supp § 5.46(1) *et seq.*]), which was considered by this Court in *Charter Township of Warren* v. *Municipal Finance Commission,* 341 Mich 607.

The situation here involved is somewhat analogous to that presented in *DiPonio* v. *City of Garden City,* 320 Mich 230. Action was there brought to enforce defendant's liability on a contract for extensions to its sewer system. The defendant claimed that the contract was *ultra vires* and void on the theory that it did not have power to bind itself to raise money to meet its obligation other than by the issuance of revenue bonds. Defendant further pointed out that it was a home-rule city, and that under the statute its rate of taxation could not exceed 2% of the assessed valuation of real and personal property. In sustaining a judgment in plaintiff's favor this Court recognized that the question before it was whether the contract was *ultra vires* as claimed by the defendant. Such issue was decided against the city. A like conclusion follows in the instant case.

Appellant's claim that imposing on the county the obligation to pay principal and interest of bonds that may fall due, with right of reimbursement against the other defendants, violates article 10, § 12, of the Constitution (1908), is without merit. The sewage-disposal system is a project designed for the protection of the public health, and as such is within the scope of the police power. The expense of establishing such system and of operating it is obviously intended to rest on a self-liquidating basis. The practical situation is that the county, if funds are not immediately available for the payment of principal and interest due on the bonds to be issued, shall make necessary advances with the right of reimbursement

from the defendant townships and city. The power of the legislature to impose such requirement on the county finds support in *Oakland Drain Com'r* v. *City of Royal Oak,* 306 Mich 124; and *City of Highland Park* v. *Oakland County Drain Commissioner,* 312 Mich 407.

A decree will enter dismissing the bill of complaint and modifying, in accordance with this opinion, the decree entered by the circuit court. No costs are allowed.

DETHMERS, C. J., and KELLY and EDWARDS, JJ., concurred with CARR, J.

BLACK, J. (*for reversal*). The plaintiff taxpayer filed this bill to enjoin the defendants from continuation of proceedings taken by them pursuant to the provisions of PA 1957, No 185. The target of the bill is section 12 of said Act No 185.* Plaintiff says and defendants deny that any contract executed pursuant to said section 12 would collide with and fall before the 15-mill amendment (Const 1908, as amended, article 10, § 21). The bill was dismissed below. Plaintiff appeals.

All parties agree that the primary purpose of the suit is that of obtaining an early answer to this stated question:

"May the townships lawfully levy a tax to meet their obligations under the contract without regard to the 15-mill limitation of article 10, § 21, of the Michigan Constitution (1908) on the theory that townships are 'municipal corporations' within the meaning of the term as used in section 21 and, hence, not subject to its limitations?"

The stated question is answered in the negative. Adequate reasons for such negative answer will be

---

* CL 1948, § 123.742 (Stat Ann 1957 Cum Supp § 5.570[12]).—RE-PORTER.

found in *Bacon* v. *Kent-Ottawa Metropolitan Water Authority,* 354 Mich 159, handed down herewith.

The case should be reversed and remanded for entry of decree granting plaintiff relief according to the tenor of this opinion. No costs.

SMITH, VOELKER, and KAVANAGH, JJ., concurred with BLACK, J.